## WHITNEY et al. v. BUTTERFIELD et al.

In the service of process the Sheriff is responsible only for unreasonably, or not reasonably, executing it. He is not bound to start on the instant of receiving a writ to execute it, without regard to anything else.

Reasonable diligence in the execution of process depends upon the particular facts; whether, for instance, the writ be for fraud, or because defendant is about to leave the State, or remove his property, and the like.

A writ placed in the Sheriff's hands on Sunday cannot be officially received by him on that day. It can only be considered officially in his hands when Sunday has expired.

Where one writ of attachment was placed in the Sheriff's hands on Sunday, and another against the same defendant was placed in the hands of a Deputy at a quarter past twelve on Monday morning, the Sheriff not knowing the fact, and the first levy was made under the last writ at one o'clock Monday morning, the Sheriff was not guilty of negligence in executing the first writ—no special circumstances being shown.

The mere omission of a Deputy to inform the Sheriff of having process in hand is not such negligence as to charge the Sheriff, in case a writ last in hand was executed first.

The Sheriff and his Deputy are one person in law, so far as to make the former responsible for the acts of the latter, but not so far as to require of the Sheriff impossibilities, or to impose unconscionable exactions.

APPEAL from the Fourteenth District.

Suit against a Sheriff and his sureties for damages in not levying an attachment with due diligence.

On the 4th of April, 1857, plaintiffs sued out a writ of attachment, in the Twelfth District Court, against Abbott & Edwards, residents of Nevada City. On the next day, Sunday, between the hours of nine and ten, P. M. the writ was placed in the hands of defendant, Butterfield, the Sheriff, with instructions to levy, as soon as possible, on certain property of said Abbott & Edwards, which was named. About fifteen minutes after the hour of twelve, A. M. of Monday, the 6th day of April, 1857, Clark & Co. brought suit, by attachment, against said Abbott & Edwards in the Fourteenth District Court, in and for Nevada County, and put the writ in the hands of one Bidwell, a Deputy of Butterfield. This writ was levied on all the property of Abbott & Edwards in Nevada City and County, about one o'clock, A. M. of said 6th day of April.

The attachment of plaintiffs was levied at eight o'clock in the morning of the same day.

Subsequently, plaintiffs and Clark & Co. obtained judgments in their respective suits; the property attached was sold in due course of law, and the proceeds being more than the judgment of plaintiffs, but less than that of Clark & Co. were paid over to the latter upon their execution.

In September, 1857, plaintiffs issued execution, which was returned *nulla bona* by Boring, the then Sheriff. They also issued another execution, and placed it in the hands of Butterfield, ex-

Sheriff, with directions to levy upon any property in his hands belonging to Abbott & Edwards, or to be found in said county, etc. Butterfield returned that he had no property in his possession or under his control belonging to them.

At the date of the levy of said attachments and said executions, Abbott & Edwards had no property other than that seized.

In July, 1857, they applied for a discharge in insolvency.

The answer denied negligence.

The case being submitted to the Court upon an agreed statement of facts, plaintiffs had judgment for the amount of their judgment against Abbott & Edwards. Defendants appeal.

*Buckner & Hill,* for Appellants.

1. There was no want of diligence on the part of the Sheriff in levying plaintiff's writ. (Wood's Dig. 680, Sec. 3237.) He was not bound to levy, without special instructions, until return time. (2 Caines, 243; 4 Johns. 450; 16 Id. 287; Crocker on Sheriffs, etc. 165; Practice Act, Sec. 141; *Tucker* v. *Bradley,* 15 Conn. 46; *Bassett* v. *Boumar,* 3 B. Mon. 325; *Commonwealth* v. *Magee,* 8 Barr, 246.) This writ could not be executed on Sunday. (*Bland* v. *Whitfield,* 1 Jones' Law, 122; 9 Porter, 151; Wood's Dig. 157, Art. 704.)

2. The writ first served has priority. (Drake on Attach. Secs. 225, 218, 260; *Johnson* v. *Graham,* 6 Cal.)

*McConnell & Niles,* for Respondent.

1. The Sheriff ought to have levied plaintiffs' writ first, because he received it first, and the lien of plaintiff has priority. (*Edwards* v. *Hernon,* Note to Practice Act, Sec. 125; *Larned et als.* v. *Vanderberg,* 7 How. Pr. 379; *Lambert* v. *Baulding,* 18 Johns. 314; *Beals* v. *Allen,* Id. 363; *Van Winkle* v. *Udell,* 1 Hill, 559; *Slade* v. *Van Vechton,* 11 Paige Ch. 21; 17 Johns. 116; 5 Cow. 390; 1 Barb. 542; 2 Comst. 451; *Hunt* v. *Hooper,* reported in 5 Kinny's Law Com. 110; *Drew* v. *Lamison,* 11 Adolp & Ellis, 529; 2 Johns. Ch. 283; 17 Johns. 483; 12 Id. 403; 18 Id. 363; *Payne* v. *Drew,* 4 East. 523; *Saunders* v. *Bridges,* 5 Eng. C. L. 235; *Smallcourt* v. *Buckingham,* 1 Salkeld, 320.)

2. The writ could be received on Sunday. (3 Chitty's General Pr. 104; Tidd's Pr. 106, 216; 3 Blac. Com. Sec. 290; Sir Wm.

Moore's Case, 2 Ld. Raymond, 1028; 13 Wend. 425; *Drury* v. *Defontaine*, 1 Taunt. 131; *Bloxome* v. *Williams*, 3 Barn. & Cres. 232; *Rex* v. *Whitnash*, 7 Id. 596; *Geer* v. *Putnam*, 10 Mass. 312; *Sayles* v. *Smith*, 12 Wend. 57; *Story* v. *Elliott*, 8 Cow. 28; *Swaine* v. *Broome*, 3 Burrows, 1596; 1 W. Blac. 528; *Rex* v. *Brotherton*, 2 Strange, 702; 9 Coke, 66 *b.*; 14 Eng. C. L. 270.)

TERRY, C. J. delivered the opinion of the Court—FIELD, J. concurring.

This question touches the liability of the Sheriff for not levying an attachment put in his hands on Sunday; the goods of defendant having been seized by his Deputy on Monday, though the last writ came to his hands early on the same day, and was levied on the property which was disposed of by the last writ— so that the first remained unsatisfied. The principles which determine this case we think somewhat different from those argued at the bar.

The Sheriff's liability rests on his breach of official duty. As he is bound to perform his duty, so is he responsible to every one who may be injured by his failure to discharge it. In respect to the execution of process these official duties are well defined by law. The law is reasonable in this, as in all other things. It holds public officers to a strict performance of their respective duties. It tolerates no wanton disregard of these duties. It sanctions no negligence; but it requires no impossibilities and imposes no unconscionable exactions. When process of attachment or execution comes to the hands of the Sheriff, he must obey the exigency of the writ. He must, in such cases, execute the writ with all reasonable celerity. Whenever he can make the money on execution, or secure the debt by attachment he must do it. But he is not held to the duty of starting on the instant after receiving a writ, to execute it, without regard to anything else than its instant execution. Reasonable diligence is all that is required of him in such instances. But this reasonable diligence depends upon the particular facts in connection with the duty. If, for example, a Sheriff has execution against A, and has no special instruction to execute it at once, and there is no apparent necessity for its immediate execution, it would not be contended that he was under the same obligations to ex-

Whitney *v.* Butterfield.

ecute it instantaneously as if he were so instructed, and there were circumstances of urgency. So in respect to an attachment. If an attachment were sued out on the ground of a defendant's fraud, or his being in the act of leaving the State, or removing his property, the very fact of the issuance of the attachment, or the making of the affidavit, would seem to indicate to the officer the necessity of immediate action. But, generally, in the absence of special circumstances, an attachment issued for the security of a debt, under the old statute authorizing such a process, does not stand upon a more favorable footing, so far as regards the necessity of immediate service, than an execution.

It is true the statute, (Wood's Dig. 183, Sec. 125,) directs that the Sheriff "shall execute the writ of attachment without delay;" but this was not intended to introduce a new rule. The expression, "without delay," does not mean that the Sheriff shall, the instant he receives process of this sort, lay aside all other business and proceed to execute it, unless some special reasons of urgency exist. The rule is thus stated by the Supreme Court of New York, in *Hinman* v. *Borden*, (10 Wend. 367): "A Sheriff is bound to use all reasonable endeavors to execute process." It is true that some authorities hold the rule with more strictness. In *Lindsay's Executors* v. *Armfield*, (3 Hawks, N. C. R.) the Sheriff was held liable for not levying from 7th October to 1st November, following—no explanation being offered for the failure. Mr. Justice Hall says, "The law declares it to be the duty of the Sheriff to execute all process which comes to his hands, with the utmost expedition, or as soon after it comes into his hands as the nature of the case admits," and cites Bacon Abridg. Sheriff N. That author holds the doctrine in the same language as that quoted. Mr. Justice Henderson, in the case in Hawks, states the doctrine a little different. He says, "The Sheriff should proceed with all convenient speed to levy the execution." The learned American editor of Bacon cites, in support of the doctrine of the text, several cases, which we have examined. None of them sustain the rule in its strictness, even if we are to regard the doctrine of Bacon as laying down a different rule so far as the liability of the Sheriff is concerned, from that held in Wendell and other cases; for Bacon says, in the next sentence to that quoted, that

the "Sheriff must not show any favor, nor be guilty of *unreasonable delay.*" In *Kennedy* v. *Brant*, (6 Cranch,) C. J. Marshall holds that the Marshal is bound to serve the process as soon as he reasonably can.

The question of unreasonable delay, is a mixed question of law and fact, each case depending on its own circumstances; for, as we said before, the speed with which the Sheriff must proceed may depend upon the apparent necessity for quick action. But we have found no case which holds that the mere delay of a few hours, without some showing of special urgency has been held sufficient to charge the Sheriff. If we suppose, then, that the process reached the hands of the principal Sheriff at one o'clock on Monday morning, we do not perceive that the Sheriff would have been liable—nothing else appearing—for failing to levy it before. But the particular facts of this case make it stronger for the Sheriff. The attachment of plaintiff was placed in the principal Sheriff's hands on the night of Sunday, between nine and ten o'clock. But it did not legally come to his hands as Sheriff and for service until twelve o'clock. Fifteen minutes after twelve the other attachment came to the hands of the Deputy; of this, it seems, the Sheriff had no notice; and the Deputy levied it at or about one o'clock. It seems, then, that the laches of the Sheriff in delaying this levy for an hour at midnight, is the foundation of his liability. This would be too harsh and unreasonable a requisition. It is plausibly argued that the Deputy and his principal are the same person in law; and that the attachment in the hands of the defendants is, in legal effect, in the hands of the principal; and, consequently, the case is that of an officer having a senior writ and levying a junior writ on the property of the defendant. But the answer to this argument is, that here the question is one of diligence; and that it cannot be contended that the mere omission of the Deputy to inform the principal of his having process is such negligence as to charge him.

We have seen that the Sheriff is not absolutely responsible for not executing process of this sort. He is responsible for unreasonably or not reasonably executing such process. But the test is, was a failure, in the absence of any special circumstances, to execute *this* process, unreasonable, or did it subject the Sheriff

Whitney *v.* Butterfield.

to responsibility for the debt? We may, in this connection, leave out of question this discussion as to the day, (Sunday,) on which the writ of the plaintiff was received. It is certain that for all judicial purposes, Sunday is no day at all. The Sheriff need not, on that day, indorse on the writ the fact of its reception. If given to him on that day, he did not receive it as an officer, but as the mere agent of the plaintiff. He could do nothing with it on that day. He might, if he chose, recognize the receipt of it, but it imposed on him no higher or other duties than if he had received it on the next day. He, for all practical purposes, so far as respects this writ, was not the Sheriff at all on Sunday. But we may safely concede, for all the purposes of this suit, that he received the process on the next day, and even at the beginning of that day. Was he bound, then, on this assumption, to go on and execute the writ, immediately after having received it, no peculiar necessity or apparent reason being shown why he should do so? No authorities have been cited to show that a Sheriff is bound to quit everything else, immediately on receiving an attachment or execution, and proceed to levy.

The Deputy had received Clark & Co.'s attachment early in the morning of Monday; perhaps at the very instant which marked the period which separated Sunday from Monday in the computation of time. But though Whitney's writ was in the hands of the Sheriff before this time; yet the Sheriff could do nothing with it—did not legally even receive it in his official capacity before. His connection with the writ of Whitney, as Sheriff, commenced at the very time—at the utmost—when his Deputy had the writ of Clark. But if Clark had no writ, we do not see that the Sheriff would have been bound to go at once, on the instant, when Monday commenced, and levy on the property of the defendants in attachment. Nor was the Sheriff bound to the degree of diligence which required him to communicate to his Deputy the intelligence that he had received the writ of Whitney before the Deputy levied the process of Clark. Attachments do not bind the property of the defendant from the time of the issuance, but only from the time of the actual levy, and the attachment first levied, by our statute, has the priority.

But, probably, we might put this case on a broader ground. The Sheriff could no more officially receive a writ on Sunday for

service on Sunday, than he could execute it on Sunday. Both these acts are of the same general character, and equally within the prohibition of the statute. Not receiving it then as Sheriff, he received it as the mere agent of the plaintiff. He so received it, not to execute it on Sunday, or to deal with it as a writ coming to him on that day as an officer. He might have been bound, as an agent, to deliver it to the Sheriff, or to treat it as delivered when he could act. But this was a personal, not an official, contract; it was a mere bailment which bound him, probably, as a man, but did not bind him as a Sheriff, and, if he chose to disregard it entirely, we do not see that he would be bound as an officer. It is not necessary to press this point, for the reason that if he was bound to consider it as placed in his hands on Monday, at one o'clock, there was no such negligence in failing to execute it before, as to subject him to liability. It is true that it may be urged that the Sheriff and the Deputy are one person in law; true, so far as this, that the Sheriff is responsible for the acts of the Deputy; but no one would contend that if a Sheriff has a Deputy at a remote precinct of a county, and a writ is placed in his hands, and he executes it on property in his precinct, that the Sheriff would be responsible for this, if the consequence were to deprive B of the recovery of a claim, as the result of this levy—B having put a writ in the hands of the Sheriff at the county seat, an hour before the writ was placed in the hands of the Deputy. Whitney trusted the Sheriff to consider that the writ would be in his hands on Monday, and to receive and execute it as if it were handed to him on that day; but even if it had been, the Sheriff was not bound to get out of his bed, (no special circumstances existing,) on the morning of that day, at one o'clock, and immediately proceed to the execution of the writ. It would be unjust to hold the Sheriff to this degree of diligence, and, we think, illegal.

We reverse the judgment and remand the case.