[L. A. No. 24226. In Bank. Jan. 25, 1957.]

HAYWARD LUMBER AND INVESTMENT COMPANY (a Corporation), Appellant, v. E. W. BISCAILUZ et al., Respondents.

Philip T. Lyons and Leroy B. Lorenz for Appellant.

Morrison, Foerster, Holloway, Shuman & Clark, J. F. Shuman and Scott L. Harrington as Amici Curiae on behalf of Appellant.

Harold W. Kennedy, County Counsel (Los Angeles), William E. Lamoreaux, Assistant County Counsel, Crider, Tilson & Ruppe, Donald E. Ruppe, Sims & Wallbert and James H. Sims for Respondents.

SCHAUER, J.—Plaintiff appeals from an adverse judgment, rendered by the court sitting without a jury, in its action to recover from defendant sheriff of Los Angeles County, two of his deputies,[1] and the sureties upon their respective bonds, a sum of money which plaintiff claims to have lost by reason of an alleged breach of duty by the defendant officers acting in their official capacity.

Plaintiff contends that the sheriff, acting through his deputies, wrongfully ordered the Bank of America, hereinafter referred to as the bank, to release from attachment certain funds held by the bank, and that the bank complied

---

[1] The complaint names both J. D. Brady and C. G. Traughber as deputy sheriffs; the action appears to have been dismissed as to Deputy Traughber before trial.

with the sheriff's order to the ensuing damage of plaintiff, who was unable to satisfy a judgment subsequently obtained against the judgment debtor whose funds had been attached. Plaintiff expressly disavows negligence of the sheriff as a theory of recovery; it relies, rather, upon asserted breach of official duty, absolute in nature, from which breach liability would follow as a matter of law. We have concluded, for reasons hereinafter shown, that the sheriff was not guilty of a breach of absolute duty in ordering release of the funds and so, upon plaintiff's theory, is not liable for any loss which resulted therefrom, and that the judgment should be affirmed.

Plaintiff had brought an action seeking recovery of a money judgment against Construction Products Corporation, hereinafter sometimes termed the corporation. A writ of attachment was issued in that action and levied by defendant sheriff upon the account of the corporation in the bank. The bank reported to the sheriff that it held in the account $6,858.14.

The following chronology of events then occurred:

June 1, 1951: Upon motion of the corporation, the superior court ordered a release of the attachment as to all moneys held by the bank and owing to the corporation in excess of $2,000. (The minutes of the court do not expressly state whether a formal written and signed order was, was not, or was to be, filed. See rule 2(b), Rules on Appeal.)

June 8, 1951: The above described order was entered in the permanent minutes of the court.

June 11, 1951: Plaintiff appealed from the above mentioned order and filed an undertaking to continue the attachment in force pending the appeal. (This was timely, within five days after entry of the order, in compliance with section 946 of the Code of Civil Procedure.)

June 12, 1951: The clerk of the superior court issued the following certificate:

"I, HAROLD J. OSTLY, County Clerk and Clerk of the Superior Court of the State of California, in and for the County of Los Angeles, do hereby certify:

"That the Court, in Department 35 thereof, on June 1, 1951, ordered:

" '. . . Motion of Defendant to Discharge, Dissolve and/or reduce in amount Writ of Attachment come on for hearing; [listing appearances]. . . . Motion to dissolve attachment is granted in part; Attachment released as to all property ex-

cept $2,000.00 in bank account with [particular branch of Bank of America].'

"That Notice of said Order was served upon [attorneys for plaintiff] on June 4, 1951;

"That no Bond Continuing lien has been filed in this action within 5 days of the date of said order, and that more than 5 days have elapsed from the date of service of said Order;

"In Witness Whereof, I have hereunto set my hand and affixed the Seal of said Superior Court this 12th day of June, 1951.

"Harold J. Ostly, . . . By [signed] H. J. Wilson Deputy. [Seal of Court.]"

June 12, 1951: Also on this date the sheriff, in reliance upon the clerk's above set forth certificate, sent the following "order to release" to the bank:

"[Official letterhead of the sheriff's office. Name of case. Addressed to Bank of America, particular branch involved.] You are hereby notified that I have this day released the following described personal property held by you, and attached by virtue of writ(s) issued in the above entitled action, to-wit: All monies over and above the sum of $2,000.00.

"E. W. Biscailuz, Sheriff    By [signed] J. D. Brady Deputy Sheriff."

Upon receipt of this release the bank permitted the attachment debtor to withdraw from its account all moneys in excess of $2,000. Subsequently, the attaching creditor (plaintiff) obtained a reversal of the order partially releasing the attachment, and thereafter recovered a judgment of approximately $5,000 against Construction Products Corporation. Under the writ of execution on this judgment the sheriff collected $2,000 from the bank but advised plaintiff that he had released all funds in excess of that sum. In the meantime the debtor had become bankrupt.

Plaintiff then filed the present action against the sheriff, his deputies, and the sureties upon their respective bonds, to recover the unsatisfied portion of the judgment. As above indicated, the court entered judgment in favor of all defendants, and this appeal followed. The controlling question is the nature of the sheriff's duty in the premises. Is it absolute or may it be satisfied by due diligence? We conclude that it is not absolute and, hence, may be satisfied by due diligence.

The following duties are specifically enjoined on the sheriff:

He "shall attend all superior courts held within his county and obey all lawful orders and directions of all courts held within his county" (Gov. Code, § 26603) and he "shall serve all process and notices in the manner prescribed by law" (Gov. Code, § 26608.) ■ As used in reference to the duties of the sheriff, " 'Process' includes all writs, warrants, summons, and *orders of courts of justice,* or judicial officers." (Gov. Code, § 26660; italics added.) The order of the court purporting to release the attachment "as to all property except $2,000.00 in bank account" comes within the definition of "process" above quoted.

■ As a general rule "A sheriff assuming to act virtute officii warrants that he is possessed of such authority, and if not authorized, is liable to persons who have suffered damage from steps taken under the belief that he was." (47 Am.Jur. 848, § 37; see also, *id.* 855, § 46.) ■ In respect to attachment levies it has been held in California that "The Sheriff's liability rests on his breach of official duty. As he is bound to perform his duty, so is he responsible to every one who may be injured by his failure to discharge it. In respect to the execution of process these official duties are well defined by law. The law is reasonable in this, as in all other things. It holds public officers to a strict performance of their respective duties. It tolerates no wanton disregard of these duties. It sanctions no negligence; but it requires no impossibilities and imposes no unconscionable exactions. When process of attachment or execution comes to the hands of the Sheriff, he must obey the exigency of the writ . . . But he is not held to the duty of starting on the instant after receiving a writ, to execute it, without regard to anything else than its instant execution. *Reasonable diligence is all that is required of him* in such instances. But this *reasonable diligence depends upon the particular facts in connection with the duty.* [Italics added.] . . . We have seen that the Sheriff is not absolutely responsible for not executing process of this sort. He is responsible for unreasonably and not reasonably executing such process." (*Whitney* v. *Butterfield* (1859), 13 Cal. 335, 338, 340 [73 Am.Dec. 584]; see also *Ayres* v. *Burr* (1901), 132 Cal. 125, 130 [64 P. 120]; *Sheehy* v. *Graves* (1881), 58 Cal. 449, 455.) While the statements above quoted were made in relation to the failure of the sheriff to originally levy an attachment in time to secure sufficient of the defendants' property to satisfy plaintiffs' claim because a writ subsequently issued in the action of another creditor

was levied first, the reasoning of the court is applicable here. That reasoning leads to the conclusion that the conduct of the sheriff here was not as a matter of law a breach of an absolute duty but, rather, presents a question of mixed law and fact as to whether the standard of diligence required of sheriffs in the exigency of the case was observed, i.e., a question of negligence. Such conclusion finds further support in the cases hereinafter discussed.

It is established that a sheriff is a ministerial officer, not a judicial one (*Vallindras* v. *Massachusetts etc. Ins. Co.* (1954), 42 Cal.2d 149, 154 [265 P.2d 907]), and is justified in executing "all process and orders regular on their face and issued by competent authority, whatever may be the defect in the proceedings upon which they were issued." (Code Civ. Proc., § 262.1.) "In determining whether process and orders are 'regular on their face' so far as the liability of such an officer is concerned, the following statement from *Aetna Ins. Co.* v. *Blumenthal* (1943), 129 Conn. 545, 553 [29 A.2d 751], is pertinent: 'When we speak of process "valid on its face," in considering whether it is sufficient to protect an officer, we do not mean that its validity is to be determined upon the basis of scrutiny by a trained legal mind; nor is it to be judged in light of facts outside its provisions which the officer may know. [Citations.] Unless there is a clear absence of jurisdiction it is sufficient if upon its face it appears to be valid in the judgment of an ordinarily intelligent and informed layman. To hold otherwise would mean that an officer must often act at his peril or delay until he has had an opportunity to search out legal niceties of procedure, and . . . "a result subjecting him to constant danger of liability would be an intolerable hardship to him, and inevitably detract from the prompt and efficient performance of his public duty." ' " (*Vallindras* v. *Massachusetts etc. Ins. Co.* (1954), *supra*, 42 Cal.2d 149, 154 [7].)

The sheriff here relied on a certificate of the clerk of court which appeared complete and regular on its face, to the effect that by order of the court the attachment was partially dissolved and (to an "ordinarily intelligent and informed layman") that the order dissolving and releasing it in part was final. It is a part of the clerk's duties (see Gov. Code, §§ 26800, 26803, 26831, 26832, 26833; Code Civ. Proc., §§ 153, subd. 5, 1892, 1893, 1904, 1905) to make and certify copies of the records and papers in his keeping, and where such a duty is imposed on him by law, his certificate may be accepted

as conclusive of the facts recited therein. (Code Civ. Proc., § 1893; *Baker* v. *Snyder* (1881), 58 Cal. 617, 618.)

In *O'Brien* v. *Thomas* (1937), 21 Cal.App.2d Supp. 765, 769 [65 P.2d 1370], the court stated: " [T]he order for release of the property . . . was jurisdictionally within the power of the court, was regular on its face and the marshal was justified in obeying it regardless of the fact that eventually it was upon appeal from the judgment resultantly determined to be erroneous." In that case the order directed the marshal to release the money held in attachment. Pursuant to this order and without awaiting expiration of the time for appeal, the marshal in good faith surrendered the money to the claimant. The appellant made no attempt to stay the order but successfully appealed from a judgment determining title to the money to be in a third person. Regardless of appellant's inefficiency in the latter respect, the marshal was held not liable for acting before the appeal period had expired, where he acted in reliance on the court's order which was valid on its face.

In *First Nat. Bank* v. *McCoy* (1931), 112 Cal.App. 665 [297 P. 571], plaintiff recovered judgment, notice of appeal was filed, but no bond staying execution was provided. Execution was issued and levied by the sheriff. The judgment debtor then filed a bond for the purpose of staying execution, and the court, reciting that the defendant had filed a "good and sufficient bond," ordered the sheriff to return the property to the judgment debtor. The sheriff promptly returned the property. The next day the plaintiff filed notice excepting to the sureties on the stay bond, and the sureties failed to justify, so the court ordered the sheriff to proceed to satisfy the judgment by execution. But the sheriff was unable to recover the property he had released, and the plaintiff sued the sheriff for the resultant loss. The court stated (pp. 669-671 of 112 Cal.App.): "Even when this bond to stay execution has been filed, the sheriff is not authorized to release property in his possession upon which he has regularly levied an execution unless the judgment creditor fails for a period of five days after the filing thereof to object to the sufficiency of the sureties thereon. . . .

"Pursuant to the statute last quoted [Code Civ. Proc., § 946] it is apparent the foregoing order of the court directing the sheriff to return the property to the judgment debtor was premature and unauthorized. But the court did have jurisdiction of the subject matter. . . . Although the order

was based upon an erroneous assumption of the law and an incorrect statement of facts, it nevertheless furnishes a complete justification for the sheriff to return the property since no evidence of its invalidity appears upon the face of the order. . . . When the order or process appears to be regular and valid upon its face and to have been executed by competent authority, it is the duty of a sheriff to execute it. . . . The sheriff may limit his inquiries to an inspection of the writ. . . .

"In the present case the sheriff appears to have acted in perfect good faith. Since the order of the court stated that 'a good and sufficient bond . . . to stay the writ of execution,' had been filed, and since the order fails to state when the undertaking was filed, the sheriff was justified in assuming that the bond conformed in every way to the requirements of the law, and that the five days allowed by statute for excepting to the sufficiency of the sureties had elapsed. The order also specifically directed the sheriff 'to return any and all property to the judgment debtor which he may have in his custody.' This order was valid on its face. The sheriff is a mere ministerial officer. He is not required, at his peril, to search the records to dispute specific statements which are recited in a court order directing him to perform a ministerial duty."

The language quoted from the last two cases is persuasive. It is true that in those cases the court specifically ordered the sheriff to release the property, while here the court ordered the release of the attachment in part but gave no orders directed to the sheriff. However, as has been hereinabove indicated, the sheriff is the officer who is charged with the duty of executing such orders; i.e., he levies and releases attachments and executions, serves all "process" of the court placed in his hands, and returns to the court an account of his actions. (See Code Civ. Proc., §§ 539a, 540, 542, 543, 546, 554, 556, 558, 682, 682a, 946; Gov. Code, §§ 26608, 26609.) ■ The sheriff would be bound to respect and carry out the court's order releasing the attachment when a duly authenticated copy was placed in his hands (if he was entitled to rely on it at all) just as he is bound where the order is specifically addressed to him. (See *Clark* v. *Superior Court* (1918), 37 Cal.App. 732, 734 [174 P. 681].)

■ An appeal does not continue an attachment in force unless it is perfected within five days after written notice of the entry of the order appealed from. (Code Civ. Proc., § 946.) ■ The certificate of the clerk in this case stated

that "Notice of said Order [releasing the attachment in part] was served upon" the attorneys for plaintiff, and that "more than 5 days have elapsed from the date of service of said Order." It could reasonably have been believed by the sheriff that the notice served was the "written notice of the entry of the order" provided for by section 946 of the Code of Civil Procedure, and that the time for effective appeal from the order had passed. The further statement in the certificate that "no Bond Continuing lien has been filed . . . within 5 days of the date of said order" would further support the conclusion that the order had become final. (See *First Nat. Bank* v. *McCoy* (1931), *supra,* 112 Cal.App. 665, 671.)

For the reasons above stated, we conclude that the sheriff was justified as a matter of law in ordering the release, or that, at the most, there is presented a question of negligence (a question of mixed law and fact as to the exercise of due diligence in the performance of official duty) and that in either event this appeal must result in affirmance.[2]

Other questions are argued or suggested by the parties but for reasons indicated need not be resolved. Inasmuch as the bank is not a party to the action we need not consider whether the bank was justified in relying on the sheriff's release or whether as against the bank the sheriff would be estopped to deny his authority to release the funds.[3] (See Code Civ. Proc., § 1962, par. 3; *Davenport* v. *Stratton* (1944), 24 Cal.2d 232, 243 [6] [149 P.2d 4].) For a similar reason—the county clerk not having been made a party—it is not necessary to consider whether liability should devolve upon the clerk for issuing a certificate which, although perhaps accurate in all that it *did* state, stated only part of the pertinent facts when the records of the clerk disclosed other facts which had a material bearing on the matter to which the certificate related (i.e., that the order was entered in the permanent minutes on June 8, 1951, and that a notice of

[2]Plaintiff in its brief expressly disclaims reliance on any theory of negligence; it says, "Nowhere in the pleadings or the evidence in this case is there any mention of any negligence or any act which, in itself, would constitute negligence . . . As heretofore indicated, negligence is not involved in this case, by either pleading or evidence . . ."

[3]The sheriff, through his deputy, sent an "order to release" to the bank, on an official form used for the specific purpose of releasing garnishments, pursuant to what had been a long standing practice. It appears that the sheriff expected and intended that the bank should rely and act on the order to release and change its position, as it did.

appeal and undertaking to continue the attachment were filed on June 11, 1951, all prior to the date of the certificate).

For the reasons above stated, the judgment is affirmed.

Gibson, C. J., Shenk, J., Traynor, J., and Spence, J., concurred.

McComb, J., concurred in the judgment.

CARTER, J.—I dissent.

The majority opinion concludes that there can be no liability imposed upon the sheriff and his deputy because there was no breach of official duty by the deputy by reason of his unauthorized order releasing the garnisheed account. It is submitted that this conclusion is erroneous and without support in the authorities cited in the majority opinion.

First, the cases which are cited for the proposition that a sheriff is justified in relying upon a court order if the latter is "valid on its face" have no bearing under the instant circumstances. In each of those cases, the officer involved acted under a court order which specifically directed him to act. In *Vallindras* v. *Massachusetts etc. Ins. Co.*, 42 Cal.2d 149 [265 P.2d 907], the court issued an order directing the sheriff to imprison Vallindras for contempt. The order was later determined to be erroneous and Vallindras sought recovery from the sheriff for false imprisonment. Recovery was denied on the ground that the sheriff was entitled to rely upon an order, regular on its face and issued by competent authority, without conducting an investigation as to possible defects in the proceeding giving rise to the order. In *O'Brien* v. *Thomas*, 21 Cal.App.2d Supp. 765 [65 P.2d 1370], the court ordered the marshal to release money held under an attachment. The marshal released the money without awaiting expiration of the time for appeal. It was held that he was justified in relying upon the court order. In *First Nat. Bank* v. *McCoy*, 112 Cal.App. 665 [297 P. 571], the court ordered the sheriff to return attached property to the defendant after the latter had filed a stay bond. The sheriff returned the property before the time in which plaintiff had to except to the sureties on the bond had expired. Thereafter, the sureties failed to justify. The sheriff was held justified although the court order was premature. Here there was no order directing the sheriff to release the garnisheed account, hence, there was no compulsion upon the sheriff to act as in the cited cases. In each of those cases, if the court

order had not been erroneous, the officer would have been subject to liability had he failed to obey, hence, the result there reached which relieves the officer from the duty of examining the order beyond a determination that it is ''valid on its face.''

Secondly, there was no compulsion upon the sheriff by virtue of any statutory provision. Government Code, section 26608, which provides that: ''The sheriff shall serve all process and notices in the manner prescribed by law'' and Code of Civil Procedure, section 262.1, which provides that: ''A sheriff . . . is justified in the execution of, and shall execute, all process and orders regular on their face and issued by competent authority, whatever may be the defect in the proceedings upon which they were issued'' cannot justify the action of the deputy here for the reason that the court order did not call for ''service'' or ''execution'' by the sheriff. As previously noted, it did not direct the sheriff to take action. Neither did it bring into play any code section requiring the sheriff to act. In this latter respect the instant case differs from *Clark* v. *Superior Court*, 37 Cal.App. 732 [174 P. 681], cited by the majority for the proposition that: ''The sheriff would be bound to respect and carry out the court's order releasing the attachment when a duly authenticated copy was placed in his hands . . . just as he is bound where the order is specifically addressed to him.'' In the Clark case, the sheriff refused to release on the record an attachment of real property after the trial court ordered a nonsuit and the plaintiff failed to appeal within the prescribed time. It was held that the sheriff could be compelled, by a writ of mandate, to release the attachment because of a code section (Pol. Code, § 4157 subd. 7, now Gov. Code, § 26606) which declares that: ''The sheriff shall release on the record all attachments of *real property* when the attachment placed in his hand has been released or discharged.'' (Emphasis added.) There is no comparable section, however, requiring the sheriff to order the release of a garnishment (*Johnston* v. *Jones*, 78 Cal.App. 84, 85 [248 P. 286]), therefore, the statement in the majority opinion that the sheriff in this case was bound to carry out the court's order releasing the attachment is completely lacking in support.

It seems clear, then, that under the general rule quoted in the majority opinion (''A sheriff assuming to act virtute officii warrants that he is possessed of such authority, and if not authorized, is liable to persons who have suffered damage

from steps taken under the belief that he was''), the plaintiff is entitled to recover from the sheriff and his deputy for the loss occasioned by their unauthorized conduct. This conclusion is further supported by the case law in this state to the effect that a sheriff who releases attached property without authority commits a breach of his duty and is responsible to the plaintiff for the resultant loss. (*Sanford* v. *Boring,* 12 Cal. 539, 541; *Hesser* v. *Rowley,* 139 Cal. 410, 413 [73 P. 156]; *Reynolds* v. *Lerman,* 138 Cal.App.2d 586, 592 [292 P.2d 559].) Although these cases dealt with the wrongful release of attached property in the sheriff's custody, the principles expressed therein would apply to the wrongful release of garnisheed property.

The indication in the majority opinion that the only possible basis of liability is that of negligence (which theory plaintiff expressly disclaimed) is likewise without support. This question arose in *Reynolds* v. *Lerman, supra,* 138 Cal.App.2d 586, in connection with the applicability of Government Code section 1981 which requires the filing of a claim as a prerequisite to the maintenance of an action for the negligence of a public officer. In that case the sheriff had attached certain personal property and, without authority, sold it for storage charges. The owner sued the sheriff for damages for failure to ''safely keep'' the property. The contention that this amounted to a charge of negligence by the sheriff requiring the filing of a claim was rejected. The court held that it was not a question of the ''safety'' of the keeping but of a violation of the plaintiff's right to have the sheriff ''keep'' the property and that the unauthorized violation of this duty amounted to conversion, an intentional, not a negligent tort. Similarly, the unauthorized release of the attached funds was intentional, not negligent. In *Sarafini* v. *City & County of San Francisco,* 143 Cal.App.2d 570, 574-575 [300 P.2d 44], the plaintiff sued police officers who, acting upon erroneous information, had broken into her apartment. It was held that the claim statute was inapplicable because the act was deliberate although it was based upon the negligent belief that illegal activities were being conducted in the apartment. Here, defendant Brady's conduct in ordering the release was a deliberate, voluntary act although he apparently acted under the negligently acquired belief that the release was authorized. Accordingly, relief should not be denied on the ground that his conduct was merely negligent.

Further arguments of the defendants, referred to in the

majority opinion, are likewise without merit. Inasmuch as the court order, even as it appeared on the clerk's certificate, did not require any action by the sheriff, by force of the order or of any statute, the question of the liability to the clerk for issuing an incomplete certificate is irrelevant. As to the argument that the bank was not justified in relying upon the purported release order, it suffices to say that such a result would cast a burden upon the garnishee to continuously examine the myriad court records to ascertain the effectiveness of any attachments upon property held by him. To conclude that the garnishee may not rely upon an order, served by an officer of the court, could only result in confusion of the heretofore workable practices regarding the release of attachments.

For the reason that the release order was unjustified by either court order or statute, I am of the opinion that the sheriff is liable for the loss resulting from his deputy's breach of official duty and, accordingly, I would reverse the judgment.