**In the Matter of MIDWEST LIVESTOCK COMMISSION COMPANY, a Nevada corporation, Bankrupt.**

**No. BK–63–181.**

United States District Court
D. Nevada.

Aug. 14, 1967.

Stewart & Horton, Reno, Nev., for the Trustee in Bankruptcy.

William L. Harper, Reno, Nev., and Deadrich, Bates & Lund, Bakersfield, Cal., for petitioner.

## DECISION ON REVIEW OF AN ORDER OF THE REFEREE IN BANKRUPTCY

THOMPSON, District Judge.

On October 22, 1963, a petition was filed against Midwest Livestock Commission Company, a Nevada corporation, that it be adjudged bankrupt, and on March 26, 1964, said corporation was duly adjudged a bankrupt. On April 17, 1964, a petition was filed praying for a re-organization of the corporation under Chapter 10 of the Bankruptcy Act. The petition was approved by the Court on April 24, 1964, and Hayes E. Shaffer was appointed Trustee in reorganization. Midwest Livestock Commission Company was the owner of a certain Cessna 175–A aircraft, Serial No. 56521, Registration No. N 7021E. On August 23, 1963, William C. Garnick, the company president, transferred title to the aircraft to John Crowe, of Bakersfield, California, in partial satisfaction of a personal obligation of William C. Garnick and his wife to said John Crowe.

On August 30, 1963, said Garnick left the aircraft with Pemberton Flying Service, Kern County Airport, Bakersfield, California, for repairs. The repairs were completed in from ten days to two weeks, at a cost of $272.04. On September 19, 1963, the Sheriff of Kern County, California, levied an attachment on the airplane while it was in the possession of Pemberton Flying Service pursuant to a writ of attachment issued in an action in the Superior Court of Kern County, California, wherein Harris Brothers had sued the Garnicks and Midwest Livestock Commission Company for a sum in excess of $13,000. The Sheriff left the aircraft in storage with Pemberton in a locked building and in-

structed Pemberton to hold the aircraft under the Sheriff's attachment. Shortly thereafter, John Crowe made demand upon Pemberton for the aircraft and was informed that it could not be released as it was being held under the Sheriff's attachment. Some time thereafter, John Crowe filed a third party claim as the owner of the aircraft, and on January 21, 1965, the Sheriff informed Pemberton by letter: "This releases Sheriff's garnishment levied in above action on Cessna 175–A, Serial No. 56521, held by you. Plaintiff did not file undertaking against third party claimant John Crowe." During the period the aircraft was held under attachment, Pemberton billed the Sheriff's Office of Kern County for storage at the rate of $5 per day, but was paid nothing for storage.

On March 15, 1965, after proceedings duly held before the United States District Court for the District of Nevada, the Court held that the Harris levy of attachment and the purported transfer of title to John Crowe were both null and void and ordered a sale of the aircraft with the lien of Pemberton "if such is found to exist, to attach to the proceeds of the sale." On April 19, 1965, a sale of the airplane was approved and the buyer took possession from Pemberton.

Midwest Livestock Commission Company was subsequently adjudicated a bankrupt and the reorganization proceedings were dismissed. The Referee in Bankruptcy, on petition of the Trustee, subsequently undertook to determine the extent of the lien of Pemberton Flying Service, of Bakersfield, California, against the proceeds of the sale of the aircraft. After a hearing before the Referee, at which oral and documentary evidence was received, the issues were submitted to the Referee for decision.

On June 19, 1967, the Referee filed his Findings of Fact, Conclusions of Law, Opinion and Decision, in which he concluded that the lien of Pemberton Flying Service in the amount of $272.04 for repairs to the aircraft ordered by the owner prior to bankruptcy (which had not been contested by the Trustee) should be allowed, and that the lien of Pemberton Flying Service for storage ordered by the Sheriff of Kern County must be limited to the sum of $250 under Section 1208.62 of the California Code of Civil Procedure.

■ Roy Pemberton, doing business as Pemberton Flying Service, has petitioned for review of the Referee's decision, contending that the lien of Pemberton Flying Service for storage and repairs should be adjudicated in the amount of $2,291.54; that is, $272.04 for repairs and $2,019.50 for storage, computed at the rate of $3.50 per day, which the Referee had found to be the reasonable value of the storage.

The Petition has asserted five specifications of error in the Petition for Review, four of which may be disposed of simultaneously. The substance of these four, taken together, is that the evidence showed and the Referee should have found that the aircraft was left in storage by Midwest Livestock Commission Company from September 19, 1963 until April 19, 1965; that it was not stored by order of and for the benefit of the Sheriff of Kern County, California; that it was stored for a total of 577 days with the knowledge and consent of the debtor, Midwest Livestock Commission Company; and that in any event, storage must be allowed from January 21, 1965, when the Sheriff's attachment was released, until April 19, 1965, when possession was taken by the buyer from the Trustee in Reorganization. These contentions are premised upon the assumption that when an aircraft is left with a flying service for repair, the repairman has not only a statutory lien on the aircraft for repairs, but also a lien for the reasonable value of storage until the repair bill is satisfied by the owner or by sale to satisfy the lien.

This is not the California law. Section 2892 of the California Civil Code provides:

"HOLDER OF LIEN NOT ENTITLED TO COMPENSATION. One

who holds property by virtue of a lien thereon, is not entitled to compensation from the owner thereof for any trouble or expense which he incurs respecting it, except to the same extent as a borrower, under Sections 1892 and 1893. (Enacted 1872.)"

This general provision of the California lien law has been interpreted in Owens v. Pyeatt, 248 Cal.App.2d 840, 57 Cal.Rptr. 100, involving a garage keeper's lien, a statutory lien similar to the statute regarding liens on aircraft (Section 1208.61 et seq., California Code of Civil Procedure):

"A garageman who retains possession of an automobile repaired by him in the exercise of his right to claim a lien thereon is not entitled to the reasonable value of the storage thereof during the time he keeps it in his possession. (Civ.Code § 2892; see also Moss v. Odell, 141 Cal. 335, 337, 74 P. 999.)"

It seems to us that this disposes of Pemberton's assumption that when Mr. Garnick left the subject aircraft with Pemberton for repairs, it was impliedly left for storage also. The California statute explicitly rejects this contention and with good reason. If a bailment of an aircraft or automobile for repairs can be converted to one for storage, it would be an invitation to the repairman to sleep on his rights and unduly enhance the amount of his claim for lien. The lien statute respecting aircraft (C.C.P. § 1208.65) permits a sale to satisfy the lien if it remains unpaid ten days after it becomes due, and affords ample protection to the repairman.

■ The more difficult question concerns the claim of storage lien for safekeeping of the property at the behest of the Sheriff. The Referee concluded that this was a situation contemplated by C. C.P. § 1208.62 [1] of the aircraft lien law, and, inasmuch as notice to the legal owner was not given and his written consent not obtained, the lien was limited to $250. If a sheriff holding property under attachment can subject that property to an encumbrance for the benefit of a third person, we have no difficulty in agreeing with the Referee that section 1208.62 is applicable to a bailment for safekeeping or storage, as being one for "services" within the meaning of the statute. Cf. People v. McCord, 15 Cal.App.2d 136, 59 P.2d 587. If Pemberton has any storage lien at all, it is limited to $250.

For us, the more difficult concept is the holding by the Referee that a sheriff or constable who obtains possession of personal property of another by levy of a writ of attachment has the power to subject that property to an encumbrance which is enforceable against the true owner by a third person. If this is the law, the hazards are obvious and are dramatically illustrated by the facts of this case. Here attached property, which was ultimately sold for $5,010, is claimed to be subject to a storage lien in the amount of approximately two-fifths of its value, enforceable for the benefit of a person with whom the sheriff dealt while holding the property under attachment and continuing in effect after the attachment was unconditionally released. It is also noted that while holding the aircraft for the Sheriff, storage was billed at $5 per day, but in Court, Pemberton claimed and proved only $3.50 per day as the reasonable value of the services.

[1] "Amount of lien; notice to and consent of legal owner and mortgagee. That portion of such lien in excess of two hundred fifty dollars ($250) for work or services rendered or performed at the request of any person other than the holder of the legal title is invalid, unless prior to commencing such work or service the person claiming the lien gives actual notice to the legal owner and the mortgagee, if any, of the aircraft, and the written consent of the legal owner and the mortgagee of the aircraft is obtained before such work or services are performed. For the purposes of this chapter the person named in the federal aircraft registration certificate issued by the Administrator of Civil Aeronautics shall be deemed to be the legal owner."

If the limited right to possession acquired by a Sheriff under a writ of attachment empowers him, by his voluntary act, to subject the property to statutory liens for storage, repairs or services rendered with respect to the property, we see no reason why he could not execute a chattel mortgage on the property as security for the cost of such work or services; yet, we have no doubt such action would be held to be a wrongful conversion of the property by the Sheriff.

There is an astonishing dearth of precedent on the precise point with which we are concerned. 6 Am.Jur.2d 922, § 509; 95 A.L.R. 1529. Pemberton claims that the right to a storage lien on bailment by an attaching sheriff has been settled in California, the controlling law here, and cites Bentinck v. Menotti, 97 Cal.App. 412, 275 P. 850, and Newell v. McDonald, 60 Cal.App. 202, 212 P. 389. Our review of these and other California authorities does not persuade us that this is so. The relationships created by the Sheriff's possession of property under attachment have been variously characterized. California Courts have said that the sheriff is the agent of the attaching creditor and not of the Court, and have pointed out that the attachment may be dissolved or released by ex parte direction of the attaching creditor without court intervention. In United States Overseas Airlines v. County of Alameda, 235 Cal. App.2d 348, 45 Cal.Rptr. 337, the Court reviewed California authority and said:

"Not only was the airplane not 'in litigation' but it was also not in the possession of any of the depositaries listed in section 983. The sheriff is not among those designated by the statute nor does the sheriff's levy bring the property within the 'possession' of the court. The issuance of the writ by the clerk and its levy by the sheriff are ministerial acts, not

judicial proceedings (Wheeler v. Farmer, 38 Cal. 203, 216; Hayward Lumber & Inv. Co. v. Biscailuz, 47 Cal.2d 716, 721, 306 P.2d 6). A sheriff serving a writ of attachment is an officer of the court (Sparks v. Buckner, 14 Cal.App.2d 213, 220, 57 P.2d 1395) but is not its agent. He is the agent of the attaching creditor and the attached property in the custody of the sheriff is constructively in the possession of the attaching creditor (McCaffey Canning Co. Inc. v. Bank of America, 109 Cal.App. 415, 423, 294 P. 45). The levying officer acquires only a special lien dependent on possession which authorizes him to hold the property (Civ.Code, § 3057; Code Civ.Proc. § 542) for the benefit of the attaching creditor (United States v. Fisher, D.C., 93 F.Supp. 73, 75). An attachment does not affect the general title of the owner of property who retains the power to sell or assign subject to the attachment (6 Am.Jur.2d, Attachment and Garnishment, § 459, p. 881; § 503, p. 918)."

See also: Perrin v. McMann, 97 Cal. 52, 31 P. 837. It has also been held that the keeper designated by the Sheriff is the agent of the Sheriff for whose wrongful use or disposition of the attached property the Sheriff is liable. Aigeltiner v. Whelan, 133 Cal. 110, 65 P. 125; Newell v. McDonald, 60 Cal.App. 202, 212 P. 389; Reynolds v. Lerman, 138 Cal.App.2d 586, 292 P.2d 559.

It should also be observed that the sheriff himself is given a statutory possessory lien (C.C. § 3057)[2] which secures payment to him of the costs and expenses of safely keeping the property. Perrin v. McMann, 97 Cal. 52, 31 P. 837; Newell v. McDonald, 60 Cal.App. 202, 212 P. 389; United States v. Fisher, D.C.Cal.1948, 93 F.Supp. 73; Allen v. Clark, S.D.Cal.1938, 22 F.Supp. 898.

■ While the sheriff has a statutory lien on attached property to secure

---

2. "OFFICER'S LIEN. An officer who levies an attachment or execution upon personal property acquires a special lien, dependent on possession, upon such property, which authorizes him to hold it until the process is discharged or satisfied, or a judicial sale of the property is had."

payment of his fees and costs, the plaintiff attaching creditor is primarily liable therefor and the California statutory scheme contemplates that the sheriff should keep such payments current by requiring advance deposits from and making re-current demands upon the attaching creditor [C.C.P. § 542(4)].[3] In Allen v. Clark, supra, Judge Yankwich wrote:

"The law governing the rights of sheriffs applies to the marshal in this district, both under the Conformity Act, 28 U.S.C.A. § 726 and our local rule 57. An attaching officer, before levy, may demand a deposit of sufficient money to take and keep personal property for five days. From time to time, he may make further demands for deposits for five-day periods. If this money is not paid, he may release the property *'to the person or persons from whom the same was taken.'* And 'There shall be *no liability* upon the part of the sheriff, constable or marshal to take or hold personal property unless the provisions of this section shall have been fully complied with.' Code Civ.Proc. § 542, subd. 5, as amended by St.Cal.1937, p. 1617. (Italics added.)

"The California Civil Code gives the attaching officer a lien on the property. Civ.Code Cal., § 3057. In applying the section, courts have held that it justified the officer's or his agent's refusal to release the attachment unless the fees are paid. Perrin v. McMann, 1892, 97 Cal. 52, 31 P. 837; Robinett v. Connolly, 1888, 76 Cal. 56, 18 P. 130; Bentinck v. Menotti, 1929, 97 Cal.App. 412, 275 P. 850."

We have found no case discussing the problem arising where a sheriff negligently fails to require payments from the attaching creditor and permits a large account to accrue for the safekeeping of the property. The extent of the sheriff's lien may be limited or affected by such neglect to perform his official duties.

The California courts have also definitively concluded that if an attaching sheriff does bail the attached goods to a warehouseman and the latter sells the property in enforcement of his presumed warehouseman's lien, he is acting as the agent of the sheriff and the sheriff, as principal, is liable for conversion for the unauthorized sale. Reynolds v. Lerman, 1956, 138 Cal.App.2d 586, 292 P.2d 559; Aigeltinger v. Whelan, 1901, 133 Cal.

---

**3.** "Deliverable personal property; deposit for expenses of keeping. In cases where the sheriff, constable, or marshal is instructed to take into possession personal property capable of manual delivery, whether the same is to be placed in a warehouse or in custody of a keeper, the sheriff, constable or marshal shall require, as a prerequisite to the taking of such property, that in addition to written instructions the plaintiff or his attorney of record deposit with the sheriff, constable or marshal, a sum of money sufficient to pay the expenses of taking and keeping safely said property for a period not to exceed 15 days. In the event that a further detention of said property is required, the sheriff, constable or marshal must from time to time, make written demand upon the plaintiff or his attorney for further deposits to cover estimated expenses for periods not to exceed five days each. Such demand must be served as provided in Section 1011 of this code, or by depositing such notice in the post office in a sealed envelope, as first-class registered mail, postage prepaid, addressed to the person on whom it is served at his last known office or place of residence. In the event that the money so demanded is not paid the sheriff, constable or marshal shall release the property to the person or persons from whom the same was taken. There shall be no liability upon the part of the sheriff, constable or marshal, to take or hold personal property unless the provisions of this section shall have been fully complied with. There shall be no liability upon the part of the sheriff, constable or marshal, either to the plaintiff or the defendant for loss by fire, theft, injury or damage of any kind to personal property capable of manual delivery while in the possession of the sheriff, constable or marshal either in a warehouse or in the custody of a keeper or en route to or from a warehouse unless the sheriff, constable or marshal shall be negligent in his care or handling of the property."

110, 65 P. 125. It occurs to us that a ruling that a sheriff is guilty of conversion of attached goods sold by his agent, the warehouseman, in enforcement of a statutory storage lien, is inconsistent with the thought that the limited possessory right acquired by a sheriff by levy of attachment gives him power to impose a lien on the property for the benefit of a third person.

■ It is the general rule that the lien of a bailee of a chattel arises only where his employment is by the owner or by one acting with the owner's consent, express or implied. 8 Am.Jur.2d, § 269, p. 1156; 48 A.L.R.2d 907. So California has held that no lien for storage is acquired on bailment by a thief, General Exchange Ins. Corp. v. Pellissier Square Garage, 1937, 24 Cal.App.2d Supp. 768, 69 P.2d 236, 237, and in other cases, the limited authority of the bailor has been relied upon to prevent the attachment of a statutory lien to bailed property. Lowe v. Woods, 1893, 100 Cal. 408, 34 P. 959; McTigue v. Arctic Ice Cream Supply Co., 1913, 20 Cal.App. 708, 130 P. 165. These rules may, of course, be changed by statute (Cf. Davenport v. Grundy Motor Sales Co., 1915, 28 Cal.App. 409, 152 P. 932), but we find no language in the aircraft lien law which would warrant implication of a change from settled general principles and conclude, for example, that no lien against the aircraft for work ordered by a thief would be enforceable against the true owner.

It is possible to read, as does Pemberton, the cases of Bentinck v. Menotti and Newell v. McDonald, supra, as authorizing an enforceable storage lien against a bailment of goods by an attaching sheriff. In both the cited cases, however, the sheriff or constable himself refused to release the property except on payment of the storage fees and was, in truth, enforcing his own statutory lien and not that of the warehouseman. See Allen v. Clark, supra. The Court, in the *Newell* case, in fact characterized the ex parte refusal of the garageman to release the property on order of the sheriff as possible "insubordinate conduct" of an agent toward his principal.

The distinction between the lien of the sheriff and the lien claimed by the sheriff's bailee may, on casual reflection, appear to be a distinction without a practical difference; but it does have the plain advantage of recognizing the inability of the sheriff to encumber property held under attachment and will permit judicial control of the scope of the sheriff's lien where he has failed and neglected to obtain payment of or security for keeper's costs from his principal, the attaching creditor, in the manner contemplated by C.C.P., § 542(4). "The bailee is generally held to have no lien on property for his storage charges as against the true owner where it is left with him by public officers after seizing it from such owner, either for some alleged violation of law or upon an attachment, at least in cases where the proceedings against the owner have terminated without the entry of any judgment against the property." 8 Am.Jur. 2d, p.1157, Sec. 270.

On January 21, 1965, the Sheriff of Kern County unconditionally released the attachment on the subject aircraft. His official lien depended on possession (C.C. § 3057) and was released when he abandoned possession and control. Pemberton had no statutory storage lien while he had custody of the aircraft as agent of the Sheriff. The proceedings before this Court, which resulted in the sale of the aircraft, showed that between January 21, 1965 and the date of sale, Pemberton had a valid lien for repairs in the amount of $272.04 which was never contested by anyone, but also asserted a non-existent lien for storage approximating $2,000, payment of which was a condition to release of the property. Pemberton cannot claim a storage lien for any of the period of his possession of the aircraft during which he refused to release possession unless an invalid lien claim should be paid. Pemberton must be remitted to his remedies against

the Sheriff of Kern County. Accordingly,

It is ordered:

1. The order of the Referee in Bankruptcy allowing Pemberton's lien for repairs in the amount of $272.04 against the proceeds of the sale of the aircraft is affirmed.

2. The order of the Referee in Bankruptcy ordering payment to Pemberton Flying Service of $250 on account of storage ordered by the Sheriff of Kern County is reversed.

3. Costs of the proceeding shall be borne by the Trustee.