[Civ. No. 16375. First Dist., Div. Two. July 31, 1956.]

PEARL SARAFINI, Respondent, v. CITY AND COUNTY OF SAN FRANCISCO (a Corporation) et al., Defendants; ALVIN NICOLINI et al., Appellants.

Dion R. Holm, City Attorney, Edward F. Dullea, Robert M. Desky and William E. Mullins, Deputy City Attorneys, for Appellants.

Gladstein, Andersen, Leonard & Sibbett, George R. Andersen and Rubin Tepper for Respondent.

DOOLING, J.—This is an appeal by defendants from a judgment of the Superior Court in and for the City and County of San Francisco entered in favor of plaintiff following a jury verdict.

The judgment recited that respondent Pearl Sarafini should recover from appellants Henry J. Kiernan, William C. Sullivan, Lester Eugene Hance and Alvin Nicolini (four individual police officers of the city and county of San Francisco) the sum of $3,000. The city and county of San Francisco is not a party to this appeal as the court sustained a demurrer to the complaint as to it without leave to amend.

The complaint alleged that on or about February 24, 1950, at or about the hour of 11 p. m. the appellants, without any just or legal excuse or reason therefor, and without being in possession of any legal process of any kind, forcibly and violently broke into respondent's home. At the time respondent and her child were alone in the home. Respondent further alleged that appellants did not inform her as to their identity, used heavy instruments in breaking into the premises, created a great deal of noise, and terrorized her. As a result of this manner of breaking into her home respondent asserted that she was subjected to great and severe mental and nervous shock.

It appears that three of the appellants (Sergeant Henry Kiernan, Patrolman Lester E. Hance, Patrolman William

C. Sullivan) were sent to observe the apartment or flat of respondent at 1665 Grant Avenue by their superior, appellant Lieutenant Alvin J. Nicolini. Nicolini was not present at the trial and it was stipulated between the parties that if he were called he would testify he knew nothing about the incident.

Respondent's apartment is one of eight located in a four-story building. There is a common entrance and stairway for all of the apartments.

Appellant Hance arrived at the 1600 block of Grant Avenue about 7:15 p. m. on the night in question. He remained in his car parked across the street from the building in which respondent's apartment was located until about 10:30 p. m. During this time he observed from 15 to 20 oriental male persons enter this building. About 10:30 p. m. Hance met appellants Kiernan and Sullivan and the three of them continued to observe the building for a while during which time other male orientals entered the building. Then Kiernan and Sullivan went up to the front entrance of respondent's apartment while Hance went to the back.

Respondent testified that on February 24, 1950, she was at home alone with her daughter; that about 11 p. m. while she was sleeping her door bell rang; that she went to answer the door in her sleeping garments and pushed back the curtain on it to see who was there; that she saw a strange man there; that the strange man started to bang on the door and batter it down; that she then started to run in order to escape out the back entrance; that a man coming up the back entrance grabbed her by the arm; that she was dressed in her pajamas at the time of this incident; that she thought the men were trying to burglarize or rape her or something. Respondent further testified that she did not remember much about what happened; that she did remember being in the kitchen with two of the men (Hance, one of the appellants, intercepted her on the back stairway and led her back into her kitchen); that her husband came home later; that she was nervous and hysterical the next day and her husband called a doctor who came to see her; and that the following Monday she went into the hospital where she stayed five days. She further testified to her continued nervousness and ill health.

Appellant Kiernan testified on cross-examination that although he saw some orientals going into the building, he could not see any enter respondent's flat or apartment since the door of the apartment was not visible from the outside.

He further testified that after respondent came to her door in response to his ring he said "police officer" and held his badge up in his hand. Respondent denied that anything was said to her or that the badge was displayed. It was stipulated that all of the officers were in plain clothes.

Appellant Sullivan testified that he and appellant Kiernan forcibly broke into and entered respondent's apartment by battering down the door after they saw her go toward the rear of the premises.

Appellant Hance testified that he first saw respondent when she ran out her back door and at that time she was upset and nervous. He further stated that he seized her left arm with his right hand and held her to keep her from getting away. She was then taken by him back to her kitchen where the other two officers were present.

Respondent apparently in answer to inquiries of the police officers as to the location of the house of prostitution told them to "try downstairs." Such a house was found by them at 1655 Grant Avenue and arrests and convictions followed.

As one of their contentions, appellants assert that respondent failed to plead or prove a cause of action without establishing filing of claims with the individual police officers as required by Government Code, section 1981. The section provides in part:

"Wherever it is claimed that any person has been injured or any property damaged as a result of the *negligence or carelessness* of any public officer or employee occurring during the course of his service or employment . . . within 90 days after the accident has occurred a verified claim for damages shall be presented in writing and filed with the officer or employee and the clerk or secretary of the legislative body of the school district, county, or municipality, as the case may be . . ." (Emphasis ours.)

We have emphasized the words "negligence or carelessness" in this claims statute because they delimit the cases in which such claims are required to be filed. The tort here involved is an intentional, not a negligent or careless, one. The three officers who invaded plaintiff's home did so intentionally and deliberately. Their reason or motive for the intentional invasion of plaintiff's home may have been a negligent belief that a house of prostitution was being conducted therein, but the invasion itself was nonetheless a deliberate and intentional act. We are satisfied that this cause of

action does not fall within the limits of the claims statute. (*Cf. Ward* v. *Jones,* 39 Cal.2d 756 [249 P.2d 246].)

At the outset of the consideration of the case on the merits we will state that nowhere in the record do we find any evidence to support the judgment against the appellant Nicolini. ■ A superior police officer is liable for the tortious acts of his subordinates only if he directs, cooperates in, or ratifies them. (*Michel* v. *Smith,* 188 Cal. 199 [205 P. 113] ; *Kangieser* v. *Zink,* 134 Cal.App.2d 559 [285 P.2d 950].) There is no evidence that Nicolini directed the other defendants to break into plaintiff's home nor that he either cooperated in their conduct in doing so or ratified it. It was stipulated that if called as a witness Nicolini would testify that he knew nothing about the incident. The judgment against appellant Nicolini must be reversed as finding no support in the evidence. Hereafter, in referring to appellants or defendants, it will be understood that we are referring to the appellants-defendants other than Nicolini.

■ It will also simplify the discussion to point out that evidence of the prima facie tortious conduct of appellants is to be found in their own testimony. Appellants Kiernan and Sullivan testified that they battered down the door of plaintiff's home and forcibly entered it; appellant Hance testified that he went to the back entrance to intercept anyone who might attempt to escape that way and grasped plaintiff by the arm and forced her back into her home when she was attempting to flee in her night clothes. This admitted conduct was clearly tortious unless there was legal justification for it, as to which the burden of proof was on the defendants. (*Dragna* v. *White,* 45 Cal.2d 469, 471 [289 P.2d 428].)

■ The attempted justification of appellants is that they had reasonable cause to believe that criminal conduct was being engaged in in the plaintiff's home. The defendants submitted the following instructions on this theory which were given by the court:

"You are instructed that a police officer, in all cases, may break open a door of a house in which a person to be arrested is or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired.

"If you find from the evidence that the defendant police officers made a reasonable mistake in breaking down the door of the plaintiff, if they acted on facts which would lead a reasonable person to conclude that the person or persons

sought to be arrested were in the flat, after having demanded admittance and explained the purpose for which admittance is desired, then you must return a verdict in favor of defendants.''

So far as the record shows these were the only instructions on the subject of justification of their conduct proposed by the defendants. They cannot therefore complain that more detailed or other instructions on the subject were not given. (*Ornales* v. *Wigger*, 35 Cal.2d 474, 478-479 [218 P.2d 531]; *Gioldi* v. *Sartorio*, 119 Cal.App.2d 198, 201 [259 P.2d 62]; *Mehling* v. *Zigman*, 116 Cal.App.2d 729, 735 [254 P.2d 141].)

They are also foreclosed, by the doctrine of invited error, from the contention which they seek to make on appeal, that the trial court committed error in submitting to the jury the question of probable cause for appellants' conduct. (*Collyer* v. *S. H. Kress & Co.*, 5 Cal.2d 175, 181 [54 P.2d 20].) Appellants themselves in the instructions above quoted submitted to the jury the question whether ''they acted on facts which would lead a reasonable person to conclude that the person or persons sought to be arrested were in the flat.'' Having invited this error they cannot complain of it. (*Nevis* v. *Pacific Gas & Elec. Co.*, 43 Cal.2d 626, 630 [275 P.2d 761]; *Jentick* v. *Pacific Gas & Elec. Co.*, 18 Cal.2d 117, 121 [114 P.2d 343].)

Appellants complain on several grounds of the following instruction given at the plaintiff's request:

''If you find from the evidence in this case that the defendant police officers broke into and entered the home of the plaintiff . . . without her permission and without a search warrant, and that no crime had been or was being committed by the plaintiff at the time, and if you find that one of the defendants grasped the arm of plaintiff, you are instructed that the defendants, and each of them, did then and there commit an assault upon the person of the plaintiff.

''Having committed such assault, the defendant police officers are individually and jointly liable in damages to the plaintiff for any injuries sustained by plaintiff as a result of the assault—unless you believe they had reasonable grounds for believing a misdemeanor is being committed in 1665 in the home of Mrs. Sarafini and you believe they explained the purpose for which admittance is desired.''

As to appellant Nicolini, as we have seen, the portion of the instruction which states that defendants ''are individually and jointly liable'' was erroneous since there was no evidence to support a finding of liability as to him. The other appel-

lants on their own testimony were acting in concert in making their raid on plaintiff's home and the instruction that, if liable at all, they would be jointly and severally liable was correct. (*Weinberg Co.* v. *Bixby,* 185 Cal. 87, 106, 107 [196 P. 25]; *Mary Pickford Co.* v. *Bayly Bros., Inc.,* 12 Cal.2d 501, 515 [86 P.2d 102].)

▮ Appellants argue that the instruction on "assault" was not within the issues and so constituted a fatal variance. The complaint did not in terms allege an assault, but the characterization of their conduct as an assault in this instruction did no legal injury to appellants. The effect of the instruction was to tell the jury that given the admitted facts, that they forcibly broke into and entered plaintiff's home without a warrant and without her permission and one of them grasped the arm of plaintiff, they are liable to plaintiff for the damages caused to her thereby, in the absence of proof by them of legal justification. This was a correct statement of the law, and the fact that such conduct was characterized by the court as an assault was, if error under the pleadings, a nonprejudicial error. They were liable for their admitted conduct unless they established legal justification for it. The use of the word "assault" in the instruction did not change the practical effect of an otherwise correct instruction. If that word had been omitted from the instruction the jury would have brought in the same verdict. The name given to their conduct is immaterial since the fact remains that unless they established a legal justification for it they must be held legally liable for the consequent damages to the plaintiff.

They complain of the use of the word "misdemeanor" in this instruction. In this respect the instruction is more favorable to appellants than the law. ▮ For a misdemeanor, not committed in his presence, an officer would not be entitled to break into a home without a warrant (Pen. Code, § 836; 5 Cal.Jur.2d, Arrest, § 8, pp. 155-156) and a crime is only committed in the presence of an officer if it is apparent to one of the officer's senses (*People* v. *Brown,* 45 Cal.2d 640, 642 [290 P.2d 528]). Appellants enumerate a list of felonies that they argue must be committed in a house of prostitution and contend that reasonable ground to believe that any one of these was being committed in plaintiff's home would justify their conduct. If so they were fully protected by this instruction. Since the basis of their belief that any of these

felonies was being committed would be their belief that plaintiff's home was a house of prostitution, the instruction that their reasonable belief that a misdemeanor was being committed in plaintiff's home would justify their conduct would cover as well their belief that any felony was being there committed, because such belief could only rest on their primary belief that it was a house of prostitution.

■ Appellants complain that they were not permitted to prove that they were acting on information previously given to them that a house of prostitution was being conducted in this apartment. Such evidence if properly offered is admissible on the issue of justification. (*People* v. *Boyles*, 45 Cal.2d 652 [290 P.2d 535]; *Aitken* v. *White*, 93 Cal.App.2d 134, 145 [208 P.2d 788].) ■ However, on the record before us the question is not open to appellants. The record shows that early in the presentation of their defense the following occurred in the examination of appellant Kiernan:

"Q. Now on the evening . . . of February 24, 1950, was the address of 1665 Grant Avenue brought to your attention? A. It was. . . .

"Q. Officer, acting upon information that you received, you did act upon information that you received, is that true? A. That's true.

"Mr. Dullea: Q. That there was a house of prostitution at that address?

"Mr. Andersen: To which I will object as hearsay as to what may have been said.

"Mr. Dullea: I think it goes to probable cause, your Honor.

"The Court: The person from whom he received the information can come here and testify.

"Mr. Dullea: Then I will proceed, your Honor, now, though we don't have him to present at this time."

The objection that this was hearsay was not good but counsel acquiesced in the ruling of the court by his last comment and is in no position to complain of it on appeal.

The matter was only broached once subsequently. In the record of the examination of appellant Sullivan the following is found:

"Q. And did you receive information that a house of prostitution was being conducted at 1665 Grant Avenue?

"Mr. Andersen: Again, to which we will object as calling for the opinion and conclusion, no foundation at all laid for that, your Honor.

"The Court: Objection sustained."

No further questions were asked on the subject, appellants' counsel going on to other matters. The objection on the grounds stated was good. The plaintiff was entitled to have the foundation laid of the person or persons who gave the information and then to have the witness testify to what he or they actually said, rather than to the mere conclusion of the witness that he had received certain information. To properly lay a foundation for presenting the question on appeal counsel should have proceeded to develop the facts, and not, as he here did, have dropped the subject after the objection to his single question was properly sustained. On the record before us we can find no error in this ruling of the court.

 The circumstance of any number of men being seen entering the common entrance which served eight apartments, with or without general information that a house of prostitution was being conducted therein, would not be enough to justify appellants' conduct in forcibly battering down the door of plaintiff's home in the middle of the night. If this were the law no resident of any multiple dwelling apartment house would be safe from such forcible intrusion.

In *People* v. *Tarantino,* 45 Cal.2d 590, 594 [290 P.2d 505], the court quoted with approval the following language from *McDonald* v. *United States,* 335 U.S. 451 [69 S.Ct. 191, 93 L.Ed. 153] :

"Absent some grave emergency, the Fourth Amendment has interposed a magistrate between the citizen and the police. This was done not to shield criminals nor to make the home a safe haven for illegal activities. It was done so that an objective mind might weigh the need to invade that privacy in order to enforce the law. The right of privacy was deemed too precious to entrust to the discretion of those whose job is the detection of crime and the arrest of criminals."

 Here the home of an innocent woman was forcibly invaded in the night. Where the officers have reasonable grounds for such an invasion of privacy even the rights of the guiltless must give way. (*Coverstone* v. *Davies,* 38 Cal.2d 315 [239 P.2d 876] ; *Allen* v. *McCoy,* 135 Cal.App. 500 [27 P.2d 423, 28 P.2d 56] ; *Lowry* v. *Standard Oil Co.,* 54 Cal. App.2d 782 [130 P.2d 1].) But in this case the jury was amply justified in their conclusion that no reasonable grounds for appellants' conduct was shown.

Judgment against appellant Nicolini reversed; judgment against the other appellants affirmed.

Nourse, P. J., and Kaufman, J., concurred.

A petition for a rehearing was denied August 30, 1956, and the petition of appellants Henry J. Kiernan, William C. Sullivan and Lester Eugene Hance for a hearing by the Supreme Court was denied September 25, 1956.