**UNITED STATES of America ex rel. Rudolph BOYANCE, Appellant,**

v.

**David N. MYERS, Superintendent.**

**No. 16822.**

United States Court of Appeals Third Circuit.

Argued Feb. 8, 1968.

Decided July 29, 1968.

Curtis R. Reitz, Philadelphia, Pa., for appellant.

Oscar S. Bortner, First Asst. Dist. Atty., Doylestown, Pa. (Ward F. Clark, Dist. Atty., Doylestown, Pa., on the brief), for appellee.

## OPINION OF THE COURT

Before HASTIE, Chief Judge, and VAN DUSEN, Circuit Judge.

HASTIE, Chief Judge.

This is the second appeal by a state prisoner from a denial of his petition for habeas corpus challenging the validity of his conviction and confinement. On first appeal we concluded that the district court had erred in dismissing the petition for alleged failure to exhaust state remedies, and in remanding the case for disposition on its merits we observed that the "illegal search and seizure claim, if established, is sufficient to require the vacation of petitioner's conviction." 3 Cir., 372 F.2d 111, 112. Thereafter, with the consent of the parties, the district court decided the case upon the records made in earlier state court proceedings, concluded that the search and seizure were valid and again denied habeas corpus. This appeal followed. It raises the issue whether a particular nighttime search of an occupied family home was "unreasonable" in the Fourth Amendment sense.

On the evening of July 12, 1961, having received information that a burglary was to be committed, police officers observed a car leaving the petitioner's home in Bucks County, Pennsylvania. They followed the car to Trenton, New Jersey where they observed a burglary and identified the petitioner, Boyance, as one of the participants. They again identified the petitioner crossing a toll bridge back into Pennsylvania. After being informed by an officer stationed at the Boyance home that Boyance had returned, they proceeded to obtain a search warrant.

At 1:00 a. m., on the basis of a conclusory affidavit supplemented by oral testimony relating the foregoing events,[1] a justice of the peace issued a warrant authorizing search of the Boyance home. On its face the printed warrant was limited to "search in the daytime". Armed with this warrant the officers returned to the home and about 2:30 a. m. made their entry. While some of the officers were being admitted by Boyance's wife at one door, others forced entry through a rear door. The search of the home occupied by Boyance, his wife and eight children, was conducted by at least eleven officers and lasted until about 4:00 a. m. The petitioner and a co-defendant were discovered and arrested and certain incriminating evidence was seized.

The time of a police search of an occupied family home may be a significant factor in determining whether, in a Fourth Amendment sense, the search is "unreasonable." At common law, prior to the adoption of the Fourth Amendment, there was a strong aversion to nighttime searches. 2 Hale, Pleas of the Crown, Stokes & Ingersoll ed. 1847, 113; Cooley, Constitutional Limitations, 7th

---

1. We do not reach the point urged by the appellant that unrecorded oral statements to the magistrate may not be the basis for a finding of probable cause to issue a warrant. United States v. Sterling, 3d Cir. 1966, 369 F.2d 799, 802 n. 2; Miller v. Sigler, 8th Cir. 1965, 353 F.2d 424; United States v. Grosso, W.D.Pa. 1964, 225 F.Supp. 161; Commonwealth v. Crawley, 1966, 209 Pa.Super. 70, 223 A.2d 885.

Ed. 1903, 430; Voorhies v. Faust, 1922, 220 Mich. 155, 189 N.W. 1006, 27 A.L.R. 706; Commonwealth v. Hinds, 1887, 145 Mass. 182, 13 N.E. 397. Even the odious "writs of assistance" which outraged colonial America permitted search of dwellings only in the daytime. Lasson, History & Development of the Fourth Amendment to the United States Constitution, 1937, 54. The significance of this aversion of the common law to nighttime searches is underscored by the Supreme Court's reminder that the search and seizure clause is properly "construed in the light of what was deemed an unreasonable search and seizure when it was adopted." Carroll v. United States, 1925, 267 U.S. 132, 149, 45 S.Ct. 280, 284, 69 L.Ed. 543.

During the early years of the republic this common-law tradition was embodied in two statutes passed by our first Congress that authorized only daytime searches, Act of July 31, 1789, § 24, 1 Stat. 43; Act of March 3, 1791, § 29, 1 Stat. 206. Thereafter, the reluctance to authorize nighttime searches except under exceptional circumstances continued as an integral part of our jurisprudence. Today, consistent with restrictions imposed by prior federal statutes, Rule 41(c) of the Federal Rules of Criminal Procedure provides:

"The warrant shall direct that it be served in the daytime, but if the affidavits are positive that the property is on the person or in the place to be searched, the warrant may direct that it be served at any time."

Similar limitations have been imposed under state statutes. See Petit v. Colmary, Del.1903, 4 Penne. 266, 55 A. 344; People v. Wittler, 1929, 247 Mich. 656, 226 N.W. 685; People v. Watson, 1963, 39 Misc.2d 808, 241 N.Y.S.2d 934; State v. Sabo, 1923, 108 Ohio St. 200, 140 N.E. 499.

Aversion to such police intrusion at night as a serious threat to ordered liberty also appears in authoritative contemporary judicial pronouncements. As Mr. Justice Frankfurter concisely stated in Monroe v. Pape, 1961, 365 U.S. 167, 210, 81 S.Ct. 473, 496, 5 L.Ed.2d 492:

"Searches of the dwelling house were the special object of this universal condemnation of official intrusion. Night-time search was the evil in its most obnoxious form."

See also Frank v. State of Maryland, 1959, 359 U.S. 360, 366, 79 S.Ct. 804, 3 L.Ed.2d 877; Jones v. United States, 1958, 357 U.S. 493, 498, 78 S.Ct. 1253, 2 L.Ed.2d 1514; Wolf v. People of State of Colorado, 1948, 338 U.S. 25, 27–28, 69 S.Ct. 1359, 93 L.Ed. 1782; Distefano v. United States, 5th Cir. 1932, 58 F.2d 963; Parrish v. Civil Service Comm'n, 1967, 66 Cal.2d 260, 57 Cal.Rptr. 623, 425 P.2d 223; Sarafini v. City & County of San Francisco, 1956, 143 Cal.App.2d 570, 300 P.2d 44; Walker v. Whittle, 1951, 83 Ga.App. 445, 64 S.E.2d 87.

 Here it is claimed that the serach, though made late at night, was reasonable because authorized by a warrant issued by a magistrate.[2] The district court found that since the state courts had considered and rejected the illegal search and seizure claim, they had ruled as a matter of state law that the daytime limitation of the warrant did not invalidate the search. 270 F.Supp. 734, 739. However, the issue whether the search was in fact authorized by the warrant is determinable by a reading of the warrant's simple and unambiguous language. To find that a warrant which is explicitly limited to daytime searches legalizes search at any hour of the day or night would be to disregard the magistrate's actual determination and thus to nullify the requirement of a prior

---

2. The court below found that the search was not incident to the arrest of Boyance. This factual finding was clearly justified by the record and has not been challenged by the Commonwealth on appeal. Consequently the search does not come within any exception to the requirement of obtaining a warrant. Agnello v. United States, 1925, 269 U.S. 20, 33, 46 S.Ct. 4, 70 L.Ed. 145; United States v. Merritt, 3d Cir. 1961, 293 F.2d 742.

impartial determination that a particular search will be reasonable. "When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman, or Government enforcement agent." Johnson v. United States, 1948, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436.

█ If the warrant has been silent as to the authorized time of execution it might have presented a substantial problem of interpreting language. See Johnson v. United States, 6th Cir. 1931, 46 F.2d 7; United States v. Borkowski, S.D. Ohio, 1920, 268 F. 408, 411. But in this case at 1:00 a. m. two officers asked the magistrate to issue a search warrant while their colleagues maintained nighttime surveillance of the dwelling. In these circumstances the issuance of a warrant specifying daytime search cannot reasonably be taken to indicate that the magistrate determined that an immediate search before day was necessary or appropriate. Indeed, the logical inference is strongly to the contrary. Thus, on the issue of the reasonableness of searching an occupied home at 2:00 a. m. the searcher's case is certainly no better than it would have been if no warrant had been issued, probably worse.

Yet, armed with their limited warrant, the officers returned to the watched home, joined their colleagues there, observed the darkness of the house indicating that the householders had retired, and about 2:30 a. m. made their entry, forcing a rear door in the process. The record does not show, in possible justification for this action, any reason for apprehension that the evidence within the house would be removed, hidden or destroyed before morning. Accordingly, we hold the search constitutionally invalid.

██ With reference to a separate point, we are mindful that in addition to the items seized in the search of the house itself, two iron bars, identified as being used to break into the various burglarized buildings, were found in a search of a car belonging to Roberts, a co-defendant. The car was parked in Boyance's driveway. The district court found that these were seized in a later search after Roberts, who had been discovered and arrested in the first search and was then in custody, gave his consent to the search of the car. This finding has been challenged on appeal but we need not consider whether it was clearly erroneous since the arrest of Roberts and his subsequent consent were fruits of the original search.[3] See Wong Sun v. United States, 1963, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441; Fahy v. State of Connecticut, 1963, 375 U.S. 85, 91, 84 S.Ct. 229, 11 L.Ed.2d 171. Such consent could not validate the search so far as Boyance was concerned where his consent had not been obtained and the car was within the curtilage of his home. See Chapman v. United States, 1961, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (consent of landlord does not validate search of tenant's property even though tenant was not living there). We have no doubt that the protection of the Fourth Amendment extends beyond the walls of a home to "the 'curtilage' or ground and buildings immediately surrounding a dwelling, formerly usually enclosed." Rosencranz v. United States, 1st Cir. 1966, 356 F.2d 310, 313. See also Taylor v. United States, 1932, 286 U.S. 1, 52 S.Ct. 466, 76 L.Ed. 951; United States v. Minker, 3d Cir., 1962, 312 F.2d 632, cert. denied 372 U.S. 953, 83 S.Ct. 952, 9 L.Ed. 2d 978; Hobson v. United States, 8th Cir. 1955, 226 F.2d 890.

The judgment will be reversed and the cause remanded with directions to grant the writ without prejudice to the state's right to try the defendant again.

---

3. The district court found it unnecessary to consider whether the consent was "tainted" since it found that the original search was lawful.